## PROMISSORY NOTE

$6,450,000.00                                                      May 18, 1999

FOR VALUE RECEIVED, **1300 CAMPBELL, L.P.,** a Texas limited partnership ("BORROWER"), promises to pay to the order of **GENERAL ELECTRIC CAPITAL BUSINESS ASSET FUNDING CORPORATION** ("GE CAPITAL") at GE CAPITAL's office at 10900 N.E. 4th St., Suite 500, Bellevue, Washington 98004, Attention: Real Estate Department, or at such other address as the holder hereof may from time to time designate in writing, the principal sum of **SIX MILLION FOUR HUNDRED FIFTY THOUSAND AND NO/100 DOLLARS ($6,450,000.00)** together with interest from the date the proceeds of the loan (the "Loan") evidenced by this Promissory Note (this "Note") are initially disbursed until maturity on the principal balance from time to time remaining unpaid hereon at the rate of 7.25% per annum (computed on the basis of a 360-day year of twelve (12) consecutive thirty (30)-day months) in installments as follows: (i) interest only in advance at the rate of $1,298.96 per day shall be due and payable on the date the proceeds of the Loan are initially disbursed to or for the benefit of BORROWER (including, without limitation, disbursement into an escrow for the benefit of BORROWER) for the period beginning on the date of such disbursement and ending on May 31, 1999; (ii) one hundred nineteen (119) installments of principal and interest in the amount of $46,621.04 each shall be payable commencing on July 1, 1999, and continuing on the first day of each and every succeeding month until and including May 1, 2009, and (iii) on June 1, 2009, all then unpaid principal and interest hereon shall be due and payable.

If any payment shall not be paid when due and shall remain unpaid for ten (10) days, BORROWER shall pay an additional charge equal to five percent (5.00%) of the delinquent payment or the highest additional charge permitted by law, whichever is less.

Upon not less than thirty (30) days advance written notice to GE CAPITAL at any time after July 1, 2004 and upon payment of the Prepayment Premium, BORROWER shall have the right to prepay all, but not less than all, of the outstanding balance of this Note on any regularly scheduled principal and interest payment date. The Prepayment Premium shall be determined by (i) calculating the decrease (expressed in basis points) in the current weekly average yield of Ten (10)-year U.S. Treasury Constant Maturities (as published in Federal Reserve Statistical Release H.15 [519]) (the "Index") from Friday, January 29, 1999, to the Friday immediately preceding the week in which the prepayment is made, (ii) dividing the decrease by 100, (iii) multiplying the result by the following described applicable premium factor (the "Premium Factor"), and (iv) multiplying the product by the principal balance to be prepaid. If the Index is unchanged or has increased from Friday, January 29, 1999, to the Friday immediately preceding the prepayment date, no Prepayment Premium shall be due. The Premium Factor shall be the amount shown on the following chart for the month in which prepayment occurs:

To Servicing 6/00

Exhibit A-1

| Number of<br>Months<br>Remaining | (Years) | Premium Factor |
|---|---|---|
| 120 - 109 | (10) | .074 |
| 108 - 97 | ( 9) | .068 |
| 96 - 85 | ( 8) | .063 |
| 84 - 73 | ( 7) | .057 |
| 72 - 61 | ( 6) | .051 |
| 60 - 49 | ( 5) | .044 |
| 48 - 37 | ( 4) | .037 |
| 36 - 25 | ( 3) | .030 |
| 24 - 13 | ( 2) | .022 |
| 12 - 1 | ( 1) | .014 |

If the Federal Reserve Board ceases to publish Statistical Release H.15 [519], then the decrease in the weekly average yield of Ten (10)-year U.S. Treasury Constant Maturities will be determined from another source designated by GE CAPITAL. Prepayment prior to July 1, 2004 will not be permitted.

If GE CAPITAL at any time accelerates this Note after an Event of Default (defined below), then BORROWER shall be obligated to pay the Prepayment Premium in accordance with the foregoing schedule. The Prepayment Premium shall not be payable with respect to condemnation awards or insurance proceeds from fire or other casualty which GE CAPITAL applies to prepayment, nor with respect to BORROWER's prepayment of the Note in full during the last six (6) months of the term of this Note unless an Event of Default has occurred. BORROWER expressly acknowledges that the Prepayment Premium is not a penalty but is intended solely to compensate GE CAPITAL for the loss of its bargain and the reimbursement of internal expenses and administrative fees and expenses incurred by GE CAPITAL.

The Loan is secured, in part, by a certain Commercial Deed of Trust, Security Agreement, Assignment of Leases and Rents and Fixture Filing (the "Deed of Trust") covering the real property and other assets (the "Property") described therein, and by certain other documents executed and delivered in connection herewith (this Note, the Deed of Trust and such other documents are collectively called, the "Loan Documents").

Subject to the exceptions described below, GE CAPITAL shall not seek any deficiency judgment against BORROWER or any general partner of BORROWER, it being understood and agreed that BORROWER and its general partners shall not have any personal liability for the payment of the indebtedness evidenced by the Loan Documents, and such indebtedness shall be considered limited recourse to BORROWER and its general partners.

The foregoing notwithstanding, GE CAPITAL shall have full recourse against BORROWER and its general partners, all of whom shall be liable jointly and severally for the full payment of any Prepayment Premium; the full amount of any taxes, insurance premiums or other amounts advanced by GE CAPITAL on behalf of BORROWER pursuant to the Loan Documents; and all attorney's

..... ............ ....... ....    ● JACOR LAND TITLE    ●    . ,    @008/030

fees and other costs of collection incurred by GE CAPITAL pursuant to any of the Loan Documents. In addition, GE CAPITAL shall have full recourse against BORROWER and its general partners, all of whom shall be liable jointly and severally for the full payment of all indebtedness evidenced by the Loan Documents in the event of fraud or intentional misrepresentation by BORROWER or any of its general partners of any material facts under any of the Loan Documents.

BORROWER and its general partners shall also be personally liable on a joint and several basis for: (i) the full amount of all rents, profits, insurance proceeds, condemnation awards, security deposits or other sums or payments received by or on behalf of BORROWER and not paid or applied in accordance with the provisions of the Loan Documents; and (ii) the amount of any damage, loss, cost or expense arising from the breach by BORROWER of any of its obligations under any lease of the Property (or any part thereof).

Nothing herein shall limit the liability of BORROWER or any general partner of BORROWER under the Certificate and Indemnity Agreement Regarding Hazardous Substances executed in favor of GE CAPITAL in connection with the Loan.

Each of the following shall constitute an Event of Default ("Event of Default") hereunder and under the Deed of Trust:

       a.     Failure of or refusal by BORROWER to make any payment of principal, interest, or any Prepayment Premium due under this Note when due, and such failure or refusal shall continue for a period of ten (10) days after written notice is given to BORROWER by GE CAPITAL specifying such failure; or

       b.     Failure of BORROWER within the time required by the Deed of Trust to make any payment for taxes, insurance or for reserves for such payments, or any other payment necessary to prevent the filing of any lien (subject to Section 4 of the Deed of Trust), and such failure shall continue for a period of ten (10) days after written notice is given to BORROWER by GE CAPITAL specifying such failure; or

       c.     Failure by BORROWER to observe or perform any obligations of BORROWER to GE CAPITAL on or with respect to any transactions, debts, undertakings or agreements other than the transaction evidenced by this Note; or

       d.     Failure of BORROWER to make any payment or perform any obligation under any superior liens or encumbrances on the Property, within the time required thereunder, or commencement of any suit or other action to foreclose any superior liens or encumbrances; or

       e.     Failure by BORROWER to observe or perform any of its obligations under any of the lease agreements covering the Property; or

       f.     The Property is transferred or any agreement to transfer any part or interest in the Property in any manner whatsoever in violation of Section 17 of the Deed of Trust is made or entered into without the prior written consent of GE CAPITAL; or

g.      If any lien or encumbrance is filed against the Property, without GE CAPITAL's prior written consent, and BORROWER fails to comply with the terms of Section 4 of the Deed of Trust; or

h.      If any lease agreement covering any portion of the Property is executed by Borrower without GE CAPITAL's prior written consent; or

i.      Filing by BORROWER of a voluntary petition in bankruptcy or filing by BORROWER of any petition or answer seeking or acquiescing in any reorganization, arrangement, composition, readjustment, liquidation, or similar relief for itself under any present or future federal, state or other statute, law or regulation relating to bankruptcy, insolvency or other relief for debtors, or the seeking, consenting to, or acquiescing by BORROWER in the appointment of any trustee, receiver, custodian, conservator or liquidator for BORROWER, any part of the Property, or any of the income or rents of the Property, or the making by BORROWER of any general assignment for the benefit of creditors, or the inability of or failure by BORROWER to pay its debts generally as they become due, or the insolvency on a balance sheet basis or business failure of BORROWER, or the making or suffering of a preference within the meaning of federal bankruptcy law or the making of a fraudulent transfer under applicable federal or state law, or concealment by BORROWER of any of its property in fraud of creditors, or the imposition of a lien upon any of the property of BORROWER which is not discharged in the manner permitted by the Deed of Trust, or the giving of notice by BORROWER to any governmental body of insolvency or suspension of operations; or

j.      Filing of a petition against BORROWER seeking any reorganization, arrangement, composition, readjustment, liquidation, or similar relief under any present or future federal, state or other law or regulation relating to bankruptcy, insolvency or other relief for debts, or the appointment of any trustee, receiver, custodian, conservator or liquidator of BORROWER, of any part of the Property or of any of the income or rents of the Property, unless such petition shall be dismissed within sixty (60) days after such filing, but in any event prior to the entry of an order, judgment or decree approving such petition; or

k.      The institution of any proceeding for the dissolution or termination of BORROWER voluntarily, involuntarily, or by operation of law; or

l.      A material adverse change occurs in the assets, liabilities or net worth of BORROWER from the assets, liabilities or net worth of BORROWER previously disclosed to GE CAPITAL; or

m.      Any warranty, representation or statement furnished to GE CAPITAL by or on behalf of BORROWER under this Note, the Deed of Trust, or any of the Loan Documents shall prove to have been false or misleading in any material respect; or

n.      Failure of BORROWER to observe or perform any other obligation under the Deed of Trust or any of the Loan Documents when such observance or performance is due, and such failure shall continue beyond the applicable cure period set forth in the Loan Documents, or if the default cannot be cured within such applicable cure period, if BORROWER fails within such time to commence and pursue curative action with reasonable diligence or fails at any time after expiration of such applicable cure period to continue with reasonable diligence all necessary curative

actions. No notice of default and no opportunity to cure shall be required if during the prior twelve (12) months GE CAPITAL has already sent a notice to BORROWER concerning default in performance of the same obligation; or

      o.    Any of the foregoing events in subsections (i), (j), (k) or (l) occur with respect to any tenant of the Property, or with respect to any guarantor of any tenant's obligations relating to the Property, or such guarantor dies or becomes incompetent; or

      p.    The occurrence of any default under any of the documents evidencing or securing any other indebtedness of BORROWER which is now or hereafter owed to GE CAPITAL.

Upon the occurrence of any Event of Default, GE CAPITAL shall have the option to declare the entire amount of principal and interest due under this Note immediately due and payable without notice or demand, and GE CAPITAL may exercise any of its rights under this Note, under the Deed of Trust and under the Loan Documents. After acceleration or maturity, BORROWER shall pay interest on the outstanding principal balance of this Note at the rate of five percent (5.00%) per annum above Chase Manhattan Bank's prime interest rate in effect from time to time, or fifteen percent (15.00%) per annum, whichever is higher, provided that such interest rate shall not exceed the maximum interest rate permitted by law.

All payments of the principal and interest on this Note shall be made in coin or currency of the United States of America which at the time shall be the legal tender for the payment of public and private debts.

If this Note is placed in the hands of an attorney for collection, BORROWER agrees to pay reasonable attorneys' fees and costs incurred by GE CAPITAL in connection therewith, and in the event suit or action is instituted to enforce or interpret this Note (including without limitation efforts to modify or vacate any automatic stay or injunction), the prevailing party shall be entitled to recover all expenses reasonably incurred at, before or after trial and on appeal, whether or not taxable as costs, or in any bankruptcy proceeding, or in connection with post-judgment collection efforts, including, without limitation, attorneys' fees, witness fees (expert and otherwise), deposition costs, copying charges and other expenses.

This Note shall be governed and construed in accordance with the laws of the State of Texas applicable to contracts made and to be performed therein (excluding choice-of-law principles). BORROWER hereby irrevocably submits to the jurisdiction of any state or federal court sitting in Texas in any action or proceeding brought to enforce or otherwise arising out of or relating to this Note, and hereby waives any objection to venue in any such court and any claim that such forum is an inconvenient forum.

This Note is given in a commercial transaction for business purposes.

This Note may be declared due prior to its expressed maturity date, all in the events, on the terms, and in the manner provided for in the Deed of Trust.

BORROWER and all sureties, endorsers, guarantors and other parties now or hereafter liable for the payment of this Note, in whole or in part, hereby severally (i) waive demand, notice of

demand, presentment for payment, notice of nonpayment, notice of default, protest, notice of protest, notice of intent to accelerate, notice of acceleration and all other notices, and further waive diligence in collecting this Note or in enforcing any of the security for this Note; (ii) agree to any substitution, subordination, exchange or release of any security for this Note or the release of any party primarily or secondarily liable for the payment of this Note; (iii) agree that GE CAPITAL shall not be required to first institute suit or exhaust its remedies hereon against BORROWER or others liable or to become liable for the payment of this Note or to enforce its rights against any security for the payment of this Note; and (iv) consent to any extension of time for the payment of this Note, or any installment hereof, made by agreement by GE CAPITAL with any person now or hereafter liable for the payment of this Note, even if BORROWER is not a party to such agreement.

        All agreements between BORROWER and GE CAPITAL, whether now existing or hereafter arising and whether written or oral, are hereby limited so that in no contingency, whether by reason of demand or acceleration of the final maturity of this Note or otherwise, shall the interest contracted for, charged, received, paid or agreed to be paid to GE CAPITAL exceed the maximum amount permissible under the applicable law. If, from any circumstance whatsoever, interest would otherwise be payable to GE CAPITAL in excess of the maximum amount permissible under applicable law, the interest payable to GE CAPITAL shall be reduced to the maximum amount permissible under applicable law; and if from any circumstance GE CAPITAL shall ever receive anything of value deemed interest by applicable law in excess of the maximum amount permissible under applicable law, an amount equal to the excessive interest shall be applied to the reduction of the principal hereof and not to the payment of interest, or if such excessive amount of interest exceeds the unpaid balance of principal hereof, such excess shall be refunded to BORROWER. All interest paid or agreed to be paid to GE CAPITAL shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full period (including any renewal or extension) until payment in full of the principal so that the interest hereon for such full period shall not exceed the maximum amount permissible under applicable law. GE CAPITAL expressly disavows any intent to contract for, charge or receive interest in an amount which exceeds the maximum amount permissible under applicable law. For the purpose of determining the highest lawful rate per annum permitted by the applicable laws of the State of Texas, the "weekly ceiling" from time to time in effect as defined in Article 5069-1D.002-.003, Title 79, Revised Civil Statutes of Texas, as amended, shall be the ceiling applicable to this transaction; however, if permitted by law, GE CAPITAL may implement any ceiling under that law used to compute the rate of interest hereunder by notice to BORROWER as provided in such article. In determining the highest lawful rate, all fees and other charges contracted for, charged or received by GE CAPITAL in connection with the loan evidenced by this Note which are either deemed interest by applicable law or required by applicable law to be deducted from the principal balance of this Note to determine the rate of interest hereon shall be taken into account. This paragraph shall control all agreements between BORROWER and GE CAPITAL.

IMPORTANT: READ BEFORE SIGNING. THE TERMS OF THIS AGREEMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN CONTRACT MAY BE LEGALLY ENFORCED. YOU MAY CHANGE THE TERMS OF THIS AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT.

### BORROWER:

**1300 CAMPBELL, L.P.,**
a Texas limited partnership

By: Dalpro Equities, Inc.,
   a Texas corporation
   as General Partner

By: _____

   Steffen E. Waltz, President